Helen F. Dalton & Associates, P.C.
Roman Avshalumov (RA 5508)
80-02 Kew Gardens Road, Suite 601
Kew Gardens, NY 11415
Telephone: 718-263-9591

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
PORFIRIO NOE PEREZ VARGAS, MARIO A. LARA
VASQUEZ, SERGIO SANCHEZ ANORVES, FREDY OMAR
BERMUDEZ MEDINA, FERNANDO SERRANO MENDOZA,
and MARLON A. ZERON, individually and on behalf of all
others similarly situated,

             Plaintiffs,

-against-

EBRO DIQUE GROUP, LLC, EBRO CONSTRUCTION
CORP., and FRANCISCO J. GARCIA, RAMON CALVO,
SILVIA OLVEIRA, and JOSE TENELEMA, as individuals,

             Defendants.

-------------------------------------------------------------------------X

**CLASS/COLLECTIVE ACTION COMPLAINT**

JURY TRIAL
REQUESTED

Plaintiffs, **PORFIRIO NOE PEREZ VARGAS, MARIO A. LARA VASQUEZ, SERGIO SANCHEZ ANORVES, FREDY OMAR BERMUDEZ MEDINA, FERNANDO SERRANO MENDOZA, and MARLON A. ZERON,** individually and on behalf of all others similarly situated, (hereinafter referred to as "Plaintiffs"), by their attorneys at Helen F. Dalton & Associates, P.C., allege, upon personal knowledge as to themselves and upon information and belief as to other matters, as follows:

## PRELIMINARY STATEMENT

1. Plaintiffs, individually and on behalf of all others similarly situated, through undersigned counsel, bring this action against **EBRO DIQUE GROUP, LLC, EBRO CONSTRUCTION CORP., and FRANCISCO J. GARCIA, RAMON CALVO,**

**SILVIA OLVEIRA, and JOSE TENELEMA, as individuals**, (hereinafter referred to as "Defendants"), to recover damages for egregious violations of state and federal wage and hour laws arising out of Plaintiffs' employment at **EBRO DIQUE GROUP, LLC** located at 49 Ralph Street, Belleville, New Jersey 07109 and **EBRO CONSTRUCTION CORP**. located at 89-39 127th Street, Richmond Hill, New York 11418.

2. As a result of the violations of Federal and New York State labor laws delineated below, Plaintiffs seek compensatory damages and liquidated damages. Plaintiffs also seek interest, attorneys' fees, costs, and all other legal and equitable remedies this Court deems appropriate.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to the FLSA, 29 U.S.C. §216 and 28 U.S.C. §1331.

4. This Court has supplemental jurisdiction over Plaintiffs' other state law claims pursuant to 28 U.S.C. §1367.

5. Venue is proper in the SOUTHERN District of New York pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

6. The Plaintiffs primarily performed work for the Defendants at job sites throughout New York City, including but not limited to: 500 5th Ave, New York, New York, 148 E 48th St, New York, New York 10017, 680 Park Ave, New York, New York 10065, 18-15 215th Street, Bayside, New York 11360, and 300 Long Beach Blvd., Long Beach, New York 11561, for which Plaintiffs allege they were not properly compensated, forming the basis of the instant lawsuit.

7. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§2201 & 2202.

## THE PARTIES
### *The Plaintiffs*

8. Plaintiff **PORFIRIO NOE PEREZ VARGAS**, residing in Newark, New Jersey, was employed by Defendants from in or around June 2020 until in or around January 2025.

9. Plaintiff **MARIO A. LARA VASQUEZ,** residing in Bronx, New York, was employed by Defendants from in or around October 2019 until in or around September 2023.

10. Plaintiff **SERGIO SANCHEZ ANORVES,** residing in Bronx, New York, was employed by Defendants from in or around August 2020 until in or around October 2024.

11. Plaintiff **FREDY OMAR BERMUDEZ MEDINA** residing in Bronx, New York, was employed by Defendants from in or around October 2020 until in or around November 2024.

12. Plaintiff **FERNANDO SERRANO MENDOZA,** residing in Elmhurst, New York, was employed by Defendants from in or around August 2022 until in or around October 2024.

13. Plaintiff **MARLON A. ZERON,** residing in Woodhaven, New York, was employed by Defendants from in or around August 2007 until in or around October 2024.

### *Corporate Defendants*
### **EBRO DIQUE GROUP, LLC and EBRO CONSTRUCTION CORP.**

14. Defendant, EBRO DIQUE GROUP, LLC, is a domestic limited liability company organized under the laws of New York with a principal executive office and service of process address located at 49 Ralph Street, Belleville New Jersey 07109.

15. Defendant, and EBRO CONSTRUCTION CORP., is a domestic business corporation organized under the laws of New York with a principal executive office and service of process address located at 89-39 127th Street, Richmond Hill, New York 11418.

16. At all relevant times hereto, Defendants, EBRO DIQUE GROUP, LLC and EBRO CONSTRUCTION CORP., through their agents, officers, managers and supervisors, maintained direct control, oversight, and direct supervision over their employees including Plaintiffs in the performance of their duties, which among others include scheduling of work and payment of wages.

17. Accordingly, at all relevant times hereto, Defendants EBRO DIQUE GROUP, LLC and EBRO CONSTRUCTION CORP. were Plaintiff's employer within the meaning and the intent of the FLSA and the NYLL.

**Joint Enterprise(s) of the Corporate Defendants**

18. At all times relevant to this action, Corporate Defendants were Plaintiffs' employers as defined by NYLL §§ 2(6), 190(3) and 651(6) and Corporate Defendants employed or jointly employed Plaintiffs.

19. Corporate Defendants shared a common or overlapping management, as all were operated by the individual Defendants sued herein.

20. Upon information and belief, Corporate Defendants shared the same pay practices, policies and procedures, and/or payroll systems for paying employees of Corporate Defendants.

21. Corporate Defendants functioned as a single integrated enterprise for purposes of the NYLL.

22. Upon information and belief, Defendants EBRO DIQUE GROUP, LLC and EBRO CONSTRUCTION CORP.  were and are both engaged in construction projects and simultaneously operated at and on the same job sites where Plaintiffs performed work.

23. At all times relevant hereto, Defendants EBRO DIQUE GROUP, LLC and EBRO CONSTRUCTION CORP. acted as a single employer in general and as joint employers with respect to Plaintiffs, as Defendants held out Plaintiffs as the employees of both entities.

24. Both corporate entities employed the same employees, including Plaintiffs, performed work on the same job site, and were both responsible for issuing Plaintiffs their wages.

25. The Corporate entities functioned as a single integrated enterprise during Plaintiffs' employment by Defendants.

26. Accordingly, at all relevant times hereto, Defendants EBRO DIQUE GROUP, LLC, EBRO CONSTRUCTION CORP., were Plaintiffs' employer within the meaning and the intent of the FLSA, and the NYLL.

27. At all times relevant to the allegations contained in the complaint, Corporate Defendants were and are, enterprises engaged in interstate commerce within the meaning of the FLSA, and that, EBRO DIQUE GROUP, LLC, and EBRO CONSTRUCTION CORP.,  (i) have purchased goods, tools, and supplies for its business through the streams and channels of interstate commerce, and have had employees engaged in interstate commerce, and/or in the production of goods intended for commerce, and handle, sell and otherwise work with

goods and material that have been moved in or produced for commerce by any person: and (ii) have had annual gross volume of sales of not less than $500,000.00.

### *The Individual Defendants*
### **FRANCISCO J. GARCIA, RAMON CALVO and SILVIA OLVEIRA**

28. Upon information and belief, at all relevant times hereto, Defendants FRANCISCO J. GARCIA, RAMON CALVO and SILVIA OLVEIRA own and operate EBRO DIQUE GROUP, LLC and EBRO CONSTRUCTION CORP.

29. Upon information and belief, Defendants FRANCISCO J. GARCIA, RAMON CALVO and SILVIA OLVEIRA are the agents of EBRO DIQUE GROUP, LLC and EBRO CONSTRUCTION CORP.

30. At all relevant times hereto, Defendants FRANCISCO J. GARCIA, RAMON CALVO and SILVIA OLVEIRA are responsible for overseeing the daily operations of EBRO DIQUE GROUP, LLC and EBRO CONSTRUCTION CORP.

31. At all relevant times hereto, Defendants FRANCISCO J. GARCIA, RAMON CALVO and SILVIA OLVEIRA have power and authority over all the final personnel decisions at EBRO DIQUE GROUP, LLC and EBRO CONSTRUCTION CORP.

32. At all relevant times hereto, Defendants FRANCISCO J. GARCIA, RAMON CALVO and SILVIA OLVEIRA have the power and authority over all final payroll decisions of EBRO DIQUE GROUP, LLC and EBRO CONSTRUCTION CORP., including the Plaintiffs.

33. At all relevant times hereto, Defendants FRANCISCO J. GARCIA, RAMON CALVO and SILVIA OLVEIRA have the exclusive final power to hire the employees of EBRO DIQUE GROUP, LLC and EBRO CONSTRUCTION CORP., including the Plaintiffs.

34. At all relevant times hereto, Defendant FRANCISCO J. GARCIA, RAMON CALVO and SILVIA OLVEIRA have exclusive final power over the firing and termination of the employees of EBRO DIQUE GROUP, LLC and EBRO CONSTRUCTION CORP., including Plaintiffs.

35. At all relevant times hereto, Defendant FRANCISCO J. GARCIA, RAMON CALVO and SILVIA OLVEIRA are responsible for determining, establishing, and paying the wages of all employees of EBRO DIQUE GROUP, LLC and EBRO CONSTRUCTION CORP.,

including the Plaintiffs, setting their work schedules, and maintaining all their employment records in the business.

36. Accordingly, at all relevant times hereto, Defendants FRANCISCO J. GARCIA, RAMON CALVO and SILVIA OLVEIRA were and are Plaintiffs' employers within the meaning and the intent of the FLSA, and the NYLL.

**JOSE TENELEMA**

37. Upon information and belief, at all relevant times hereto, Defendant JOSE TENELEMA was direct supervisor of the Plaintiffs at EBRO DIQUE GROUP, LLC and EBRO CONSTRUCTION CORP.

38. Upon information and belief, Defendant JOSE TENELEMA is the agent of EBRO DIQUE GROUP, LLC and EBRO CONSTRUCTION CORP., within the scope of their supervisory duties over Plaintiffs and other employees of EBRO DIQUE GROUP, LLC and EBRO CONSTRUCTION CORP.

39. At all relevant times hereto, Defendant JOSE TENELEMA is responsible for overseeing Plaintiffs' work on a daily basis at EBRO DIQUE GROUP, LLC and EBRO CONSTRUCTION CORP.

40. At all relevant times hereto, Defendant JOSE TENELEMA exercised supervisory authority over Plaintiffs', including providing instructions, monitoring performance, and enforcing workplace rules and policies, as directed by the Corporate Defendants.

41. At all relevant times hereto, Defendant JOSE TENELEMA participated in payroll decisions of EBRO DIQUE GROUP, LLC and EBRO CONSTRUCTION CORP., including with regard to payments made to the Plaintiffs.

42. At all relevant times hereto, Defendant JOSE TENELEMA has been involved in the hiring, firing and termination of the employees of EBRO DIQUE GROUP, LLC and EBRO CONSTRUCTION CORP., including Plaintiffs.

43. Accordingly, at all relevant times hereto, Defendant JOSE TENELEMA acted as supervisory agent of EBRO DIQUE GROUP, LLC and EBRO CONSTRUCTION CORP., within the meaning and the intent of the FLSA, and the NYLL.

## RELEVANT STATUTORY PERIOD

44.    Under the FLSA and NYLL, Plaintiffs' federal and state law claims are subject to statute of limitations periods of 3 and 6 years from the date of the filing of the Complaint, respectively. As this Complaint is filed in July 2026, the relevant statutory period for Plaintiffs' claims asserted herein encompasses the entirety of the period spanning July 2020 through present ("relevant statutory period.").

## FACTUAL ALLEGATIONS
### PORFIRIO NOE PEREZ VARGAS

45.    Plaintiff PORFIRIO NOE PEREZ VARGAS has been employed by Defendants as a construction worker, while performing related miscellaneous duties, from in or around June 2020 until in or around January 2025.

46.    During the relevant statutory period, Plaintiff PORFIRIO NOE PEREZ VARGAS regularly worked approximately five (5) to six (6) days per week.

47.    During the relevant statutory period, Plaintiff PORFIRIO NOE PEREZ VARGAS regularly worked approximately eight-and-a-half (8.5) hours per day for two (2) to three (3) days per week and approximately ten-and-a-half (10.5) hours per day for three (3) days per week.

48.    Thus, during the relevant statutory period, Plaintiff was regularly required to work approximately forty-eight-and-a-half (48.5) to fifty-seven (57) hours per week.

49.    Plaintiff PORFIRIO NOE PEREZ VARGAS was paid by Defendants an hourly rate of approximately $20.00 per hour from in or around June 2020 until in or around December 2022; and an hourly rate of approximately $25.00 per hour from in or around January 2023 until in or around January 2025.

50.    Plaintiff was paid in cash.

51.    Although Plaintiff worked approximately forty-eight-and-a-half (48.5) to fifty-seven (57) hours per week, Defendants did not pay Plaintiff time and a half (1.5) for hours worked over forty (40), a blatant violation of the overtime provisions contained in the FLSA and NYLL.

52. Upon information and belief, Defendants willfully failed to post notices of the overtime wage requirements in a conspicuous place at the location of his employment as required by the NYLL.

53. Upon information and belief, Defendants failed to provide Plaintiff with a wage notice at the time of his hire or at any time during his employment in violation of the NYLL.

54. Upon information and belief, Defendants failed to provide Plaintiff with an accurate wage statement that included all hours worked and all wages received each week when Plaintiff was paid in violation of the NYLL.

55. Moreover, Defendants were aware that they were not properly compensating Plaintiff and therefore willfully chose to continue to violate the NYLL by not paying Plaintiff proper overtime wages.

56. As a direct result of Defendants' violations and failure to provide proper wage notices and wage statements, Plaintiff suffered a concrete harm, resulting from Plaintiff's inability to identify Plaintiff's employer to remedy her compensation problems, lack of knowledge about the rates of pay he was receiving and/or should have received for his regular hours and overtime hours, terms, and conditions of his pay, and furthermore, an inability to identify his hourly rate of pay to ascertain whether he was being properly paid in compliance with the NYLL – which he was not.

57. Furthermore, Defendants' alleged willful failures to provide Plaintiff with these documents prevented Plaintiff from being able to calculate his hours worked, and proper rates of pay, and determine if he was being paid time-and-a-half for his overtime hours as required by the NYLL.

### MARIO A. LARA VASQUEZ

58. Plaintiff MARIO A. LARA VASQUEZ was employed by Defendants as a construction worker, while performing related miscellaneous duties, from in or around October 2019 until in or around September 2023.

59. During the relevant statutory period, Plaintiff MARIO A. LARA VASQUEZ regularly worked approximately five (5) to six (6) days per week.

60. During the relevant statutory period, Plaintiff MARIO A. LARA VASQUEZ regularly worked approximately eight-and-a-half (8.5) hours per day for one (1) to two (2) days per week and approximately ten-and-a-half (10.5) hours per day for four (4) days per week.

61. Thus, during the relevant statutory period, Plaintiff was regularly required to work approximately fifty-and-a-half (50.5) to fifty-nine (59) hours per week.

62. During the relevant statutory period, Plaintiff MARIO A. LARA VASQUEZ was paid by Defendants an hourly rate of approximately $23.75 per hour in or around July 2020 until in or around December 2020; and an hourly rate of approximately $25.00 per hour from in or around January 2021 until in or around September 2023.

63. Plaintiff was paid in cash.

64. Although, during the relevant statutory period, Plaintiff worked approximately fifty-and-a-half (50.5) to fifty-nine (59) hours per week, Defendants did not pay Plaintiff time and a half (1.5) for hours worked over forty (40), a blatant violation of the overtime provisions contained in the FLSA and NYLL.

65. Upon information and belief, Defendants willfully failed to post notices of the overtime wage requirements in a conspicuous place at the location of his employment as required by the NYLL.

66. Upon information and belief, Defendants failed to provide Plaintiff with a wage notice at the time of his hire or at any time during his employment in violation of the NYLL.

67. Upon information and belief, Defendants failed to provide Plaintiff with an accurate wage statement that included all hours worked and all wages received each week when Plaintiff was paid in violation of the NYLL.

68. Moreover, Defendants were aware that they were not properly compensating Plaintiff and therefore willfully chose to continue to violate the NYLL by not paying Plaintiff proper overtime wages.

69. As a direct result of Defendants' violations and failure to provide proper wage notices and wage statements, Plaintiff suffered a concrete harm, resulting from Plaintiff's inability to identify Plaintiff's employer to remedy her compensation problems, lack of knowledge about the rates of pay he was receiving and/or should have received for his regular hours and overtime hours, terms, and conditions of his pay, and furthermore, an inability to

identify his hourly rate of pay to ascertain whether he was being properly paid in compliance with the NYLL – which he was not.

70. Furthermore, Defendants' alleged willful failures to provide Plaintiff with these documents prevented Plaintiff from being able to calculate his hours worked, and proper rates of pay, and determine if he was being paid time-and-a-half for his overtime hours as required by the NYLL.

**SERGIO SANCHEZ ANORVES**

71. Plaintiff SERGIO SANCHEZ ANORVES was employed by Defendants as a construction worker, while performing related miscellaneous duties, from in or around August 2020 until in or around October 2024.

72. During the relevant statutory period, Plaintiff SERGIO SANCHEZ ANORVES regularly worked approximately five (5) to six (6) days per week.

73. During the relevant statutory period, Plaintiff SERGIO SANCHEZ ANORVES regularly worked approximately eight-and-a-half (8.5) hours per day for four (4) to five (5) days per week and approximately nine-and-a-half (9.5) hours per day for one (1) day per week.

74. Thus, during the relevant statutory period, Plaintiff was regularly required to work approximately forty-three-and-a-half (43.5) to fifty-two (52) hours per week.

75. Plaintiff SERGIO SANCHEZ ANORVES was paid by Defendants an hourly rate of approximately $15.00 per hour from in or around August 2020 until in or around December 2022; and an hourly rate of approximately $20.00 per hour from in or around January 2023 until in or around October 2024.

76. Plaintiff was paid in cash.

77. Although, during the relevant statutory period, Plaintiff worked approximately forty-three-and-a-half (43.5) to fifty-two (52) hours per week, Defendants did not pay Plaintiff time and a half (1.5) for hours worked over forty (40), a blatant violation of the overtime provisions contained in the FLSA and NYLL.

78. Upon information and belief, Defendants willfully failed to post notices of the overtime wage requirements in a conspicuous place at the location of his employment as required by the NYLL.

79. Upon information and belief, Defendants failed to provide Plaintiff with a wage notice at the time of his hire or at any time during his employment in violation of the NYLL.

80. Upon information and belief, Defendants failed to provide Plaintiff with an accurate wage statement that included all hours worked and all wages received each week when Plaintiff was paid in violation of the NYLL.

81. Moreover, Defendants were aware that they were not properly compensating Plaintiff and therefore willfully chose to continue to violate the NYLL by not paying Plaintiff proper overtime wages.

82. As a direct result of Defendants' violations and failure to provide proper wage notices and wage statements, Plaintiff suffered a concrete harm, resulting from Plaintiff's inability to identify Plaintiff's employer to remedy her compensation problems, lack of knowledge about the rates of pay he was receiving and/or should have received for his regular hours and overtime hours, terms, and conditions of his pay, and furthermore, an inability to identify his hourly rate of pay to ascertain whether he was being properly paid in compliance with the NYLL – which he was not.

83. Furthermore, Defendants' alleged willful failures to provide Plaintiff with these documents prevented Plaintiff from being able to calculate his hours worked, and proper rates of pay, and determine if he was being paid time-and-a-half for his overtime hours as required by the NYLL.

**FREDY OMAR BERMUDEZ MEDINA**

84. Plaintiff FREDY OMAR BERMUDEZ MEDINA was employed by Defendants as a construction worker, while performing related miscellaneous duties, from in or around October 2020 until in or around November 2024.

85. Plaintiff FREDY OMAR BERMUDEZ MEDINA regularly worked approximately five (5) days per week from in or around October 2020 until in or around November 2024.

86. However, during the summer months of June, July and August each year, Plaintiff FREDY OMAR BERMUDEZ MEDINA worked approximately six (6) days per week.

87. Plaintiff FREDY OMAR BERMUDEZ MEDINA regularly worked approximately eight-and-a-half (8.5) hours per day for three (3) days per week and approximately nine-and-a-half (9.5) hours per day for two (2) days per week.

88. During the summer months of June, July and August, Plaintiff FREDY OMAR BERMUDEZ MEDINA worked an additional day of approximately eight-and-a-half (8.5) hours.

89. Thus, Plaintiff was regularly required to work approximately forty-four-and-a-half (44.5) hours per week and approximately fifty-three (53) hours per week in the summer months of June, July and August each year.

90. Plaintiff FREDY OMAR BERMUDEZ MEDINA was paid by Defendants an hourly rate of approximately $23.00 per hour from in or around October 2020 until in or around October 2021 and an hourly rate of approximately $24.75 per hour from in or around November 2021 until in or around November 2024.

91. Plaintiff was primarily paid in cash, but received checks on occasion.

92. Although Plaintiff worked approximately forty-four-and-a-half (44.5) to fifty-three (53) hours per week from in or around December 2020 until in or around November 2024, Defendants did not pay Plaintiff time and a half (1.5) for hours worked over forty (40), a blatant violation of the overtime provisions contained in the FLSA and NYLL.

93. Moreover, Plaintiff was not compensated at all by Defendants for one (1) week of his employment.

94. Upon information and belief, Defendants willfully failed to post notices of the overtime wage requirements in a conspicuous place at the location of his employment as required by the NYLL.

95. Upon information and belief, Defendants failed to provide Plaintiff with a wage notice at the time of his hire or at any time during his employment in violation of the NYLL.

96. Upon information and belief, Defendants failed to provide Plaintiff with an accurate wage statement that included all hours worked and all wages received each week when Plaintiff was paid in violation of the NYLL.

97. Moreover, Defendants were aware that they were not properly compensating Plaintiff and therefore willfully chose to continue to violate the NYLL by not paying Plaintiff proper overtime wages.

98. As a direct result of Defendants' violations and failure to provide proper wage notices and wage statements, Plaintiff suffered a concrete harm, resulting from Plaintiff's inability to identify Plaintiff's employer to remedy her compensation problems, lack of knowledge

about the rates of pay he was receiving and/or should have received for his regular hours and overtime hours, terms, and conditions of his pay, and furthermore, an inability to identify his hourly rate of pay to ascertain whether he was being properly paid in compliance with the NYLL – which he was not.

99. Furthermore, Defendants' alleged willful failures to provide Plaintiff with these documents prevented Plaintiff from being able to calculate his hours worked, and proper rates of pay, and determine if he was being paid time-and-a-half for his overtime hours as required by the NYLL.

**FERNANDO SERRANO MENDOZA**

100. Plaintiff FERNANDO SERRANO MENDOZA was employed by Defendants as a construction worker, while performing related miscellaneous duties, from in or around August 2022 until in or around October 2024.

101. Plaintiff FERNANDO SERRANO MENDOZA regularly worked approximately five (5) to six (6) days per week from in or around August 2022 until in or around October 2024.

102. Plaintiff FERNANDO SERRANO MENDOZA regularly worked approximately eight-and-a-half (8.5) hours per day for four (4) to five (5) days per week and approximately ten-and-a-half (10.5) hours per day for one (1) day per week from in or around August 2022 until in or around October 2024.

103. Thus, Plaintiff was regularly required to work approximately forty-four-and-a-half (44.5) to fifty-three (53) hours per week from in or around August 2022 until in or around October 2024.

104. Plaintiff FERNANDO SERRANO MENDOZA was paid by Defendants an hourly rate of approximately $22.50 per hour from in or around August 2022 until in or around October 2024.

105. Plaintiff was paid in cash.

106. Although Plaintiff worked approximately forty-four-and-a-half (44.5) to fifty-three (53) hours per week from in or around August 2022 until in or around October 2024, Defendants did not pay Plaintiff time and a half (1.5) for hours worked over forty (40), a blatant violation of the overtime provisions contained in the FLSA and NYLL.

107. Moreover, Plaintiff was not compensated at all by Defendants for one (1) week of his employment.

108. Upon information and belief, Defendants willfully failed to post notices of the overtime wage requirements in a conspicuous place at the location of his employment as required by the NYLL.

109. Upon information and belief, Defendants failed to provide Plaintiff with a wage notice at the time of his hire or at any time during his employment in violation of the NYLL.

110. Upon information and belief, Defendants failed to provide Plaintiff with an accurate wage statement that included all hours worked and all wages received each week when Plaintiff was paid in violation of the NYLL.

111. Moreover, Defendants were aware that they were not properly compensating Plaintiff and therefore willfully chose to continue to violate the NYLL by not paying Plaintiff proper overtime wages.

112. As a direct result of Defendants' violations and failure to provide proper wage notices and wage statements, Plaintiff suffered a concrete harm, resulting from Plaintiff's inability to identify Plaintiff's employer to remedy her compensation problems, lack of knowledge about the rates of pay he was receiving and/or should have received for his regular hours and overtime hours, terms, and conditions of his pay, and furthermore, an inability to identify his hourly rate of pay to ascertain whether he was being properly paid in compliance with the NYLL – which he was not.

113. Furthermore, Defendants' alleged willful failures to provide Plaintiff with these documents prevented Plaintiff from being able to calculate his hours worked, and proper rates of pay, and determine if he was being paid time-and-a-half for his overtime hours as required by the NYLL.

## **MARLON A. ZERON**

114. Plaintiff MARLON A. ZERON was employed by Defendants as a construction worker, while performing related miscellaneous duties, from in or around August 2007 until in or around October 2024.

115. During the relevant statutory period, Plaintiff MARLON A. ZERON regularly worked approximately five (5) to six (6) days per week.

116. During the relevant statutory period, Plaintiff MARLON A. ZERON regularly worked approximately eight-and-a-half (8.5) hours per day for three (3) to four (4) days per week and approximately nine-and-a-half (9.5) hours per day for two (2) days per week.

117. Thus, during the relevant statutory period, Plaintiff was regularly required to work approximately forty-four-and-a-half (44.5) to fifty-three (53) hours per week.

118. During the relevant statutory period, Plaintiff MARLON A. ZERON was paid by Defendants an hourly rate of approximately $16.00 per hour in or around July 2020 until in or around December 2020; and an hourly rate of approximately $23.00 per hour from in or around January 2021 until in or around October 2024.

119. Plaintiff was paid in cash.

120. Although, during the relevant statutory period, Plaintiff worked approximately forty-four-and-a-half (44.5) to fifty-three (53) hours per week, Defendants did not pay Plaintiff time and a half (1.5) for hours worked over forty (40), a blatant violation of the overtime provisions contained in the FLSA and NYLL.

121. Moreover, Plaintiff was not compensated at all by Defendants for one (1) week of his employment.

122. Upon information and belief, Defendants willfully failed to post notices of the overtime wage requirements in a conspicuous place at the location of his employment as required by the NYLL.

123. Upon information and belief, Defendants failed to provide Plaintiff with a wage notice at the time of his hire or at any time during his employment in violation of the NYLL.

124. Upon information and belief, Defendants failed to provide Plaintiff with an accurate wage statement that included all hours worked and all wages received each week when Plaintiff was paid in violation of the NYLL.

125. Moreover, Defendants were aware that they were not properly compensating Plaintiff and therefore willfully chose to continue to violate the NYLL by not paying Plaintiff proper overtime wages.

126. As a direct result of Defendants' violations and failure to provide proper wage notices and wage statements, Plaintiff suffered a concrete harm, resulting from Plaintiff's inability to identify Plaintiff's employer to remedy her compensation problems, lack of knowledge about the rates of pay he was receiving and/or should have received for his regular hours

and overtime hours, terms, and conditions of his pay, and furthermore, an inability to identify his hourly rate of pay to ascertain whether he was being properly paid in compliance with the NYLL – which he was not.

127. Furthermore, Defendants' alleged willful failures to provide Plaintiff with these documents prevented Plaintiff from being able to calculate his hours worked, and proper rates of pay, and determine if he was being paid time-and-a-half for his overtime hours as required by the NYLL.

## COLLECTIVE ACTION ALLEGATIONS

128. Plaintiffs bring this action on behalf of themselves and other employees similarly situated as authorized under the FLSA, 29 U.S.C. § 216(b).  The employees similarly situated are:

129. Collective Class: All persons who are or have been employed by the Defendants as construction workers or other similarly titled personnel with substantially similar job requirements and pay provisions, who were performing the same sort of functions for Defendants, other than the executive and management positions, who have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay required overtime wages.

130. Upon information and belief, Defendants employed approximately 50 or more employees within the past three years subjected to similar payment structures.

131. Upon information and belief, Defendants suffered and permitted Plaintiffs and the Collective Class to work more than forty hours per week without appropriate overtime compensation.

132. Upon information and belief, Defendants suffered and permitted Plaintiffs and the Collective Class to work without paying all overtime wages and all wages owed under the FLSA.

133. Defendants' unlawful conduct has been widespread, repeated, and consistent.

134. Defendants had knowledge that Plaintiffs and the Collective Class performed work requiring overtime pay and wages.

135. Defendants' conduct as set forth in this Complaint, was willful and in bad faith, and has caused significant damages to Plaintiffs and the Collective Class.

136. Defendants are liable under the FLSA for failing to properly compensate Plaintiffs and the Collective Class, and as such, notice should be sent to the Collective Class. There are numerous similarly situated current and former employees of Defendants who have been denied overtime pay and their wages in violation of the FLSA and NYLL, who would benefit from the issuance of a Court-supervised notice of the present lawsuit, and the opportunity to join the present lawsuit. Those similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

137. The questions of law and fact common to the putative class predominate over any questions affecting only individual members.

138. The claims of Plaintiffs are typical of the claims of the putative class.

139. Plaintiffs and their counsel will fairly and adequately protect the interests of the putative class.

140. A collective action is superior to other available methods for the fair and efficient adjudication of this controversy.

## <u>FEDERAL RULE OF CIVIL PROCEDURE RULE 23 CLASS ALLEGATIONS</u>

141. Plaintiffs sue on their own behalf and as the class representative (hereinafter referred to as the "New York Class Representative") and bring the Second, Fourth, Fifth, and Sixth Causes of Action on their own behalf and as a class action, on behalf of those similarly situated, pursuant to Fed. R. Civ. P. 23(a) and (b). The Fed. R. Civ. P. 23 Class is defined as:

> Tapers and construction workers, or other similarly titled personnel who are currently or have been employed by the Defendants at EBRO DIQUE GROUP, LLC, and EBRO CONSTRUCTION CORP., at various job sites throughout New York and who worked greater than 40 hours per week (hereinafter referred to as the "New York Class") without receiving time and a half for all hours over 40 each workweek, and were never compensated by the Defendants for their work performed, during the 6 years prior to the filing of the Complaint (hereinafter referred to as the "New York Class Period").

142. The persons in the New York Class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and facts upon which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there are greater than 100 members of the New York Class during the New York Class Period.

143. There are questions of law and fact common to the New York Class that predominate over any questions solely affecting individual members of the New York Class, including but not limited to:

   a. Whether Defendants unlawfully failed to pay overtime compensation, failed to pay wages, failed to provide wage notices, and failed to provide accurate wage statements, in violation of and within the meaning of the NYLL;

   b. Whether the New York Class Representatives and New York Class are nonexempt from entitlement to overtime compensation for hours worked under the pay requirement of the NYLL;

   c. Whether Defendants failed to keep accurate and complete time records for all hours worked by the New York Class Representatives and the New York Class;

   d. Whether Defendants' policy of failing to pay workers was instituted willfully or with reckless disregard of the law;

   e. The proper measure of damages sustained by the New York Class Representative and the New York Class; and

   f. Whether Defendants should be enjoined from such violations in the future.

   g. The New York Class Representatives will fairly and adequately protect the interests of the New York Class and have no interests antagonistic to the class. The Plaintiffs are represented by attorneys who are experienced and competent in both class litigation and employment litigation.

   h. A class is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant. The damages sustained by individual class members are modest

compared to the expense and burden of individual prosecution of this litigation. Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

144. Further, the New York Class Representative and the New York Class have been equally affected by Defendants' failure to pay overtime wages and failure to pay wages. Moreover, members of the New York Class still employed by Defendants may be reluctant to raise individual claims for fear of retaliation.

145. Defendants have acted or refused to act on grounds generally applicable to the New York Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

146. Plaintiffs' claims are typical of those of the class. Plaintiffs and the other class members were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning the non-payment of overtime wages and the failure to keep adequate records. The job duties of Plaintiffs are typical of those of the class members.

147. The New York Class Representative intends to send notice to all members of the New York Class to the extent required by Rule 23.

## FIRST CAUSE OF ACTION

### Overtime Wages Under The Fair Labor Standards Act

148. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

149. Plaintiffs have consented in writing to be a party to this action, pursuant to 29 U.S.C. §216(b).

150. At all times relevant to this action, Plaintiffs were engaged in commerce or the production of goods for commerce within the meaning of 29 U.S.C. §§206(a) and 207(a).

151. At all times relevant to this action, Defendants were employers engaged in commerce or the production of goods for commerce within the meaning of 29 U.S.C. §§206(a) and 207(a).

152. Defendants willfully failed to pay Plaintiffs' overtime wages for hours worked in excess of forty (40) hours per week at a wage rate of one and a half (1.5) times the regular wage, to which Plaintiffs were entitled under 29 U.S.C. §§206(a) in violation of 29 U.S.C. §207(a)(1).

153. Defendants' violations of the FLSA as described in this Complaint have been willful and intentional. Defendants have not made a good effort to comply with the FLSA with respect to the compensation of the Plaintiffs.

154. Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, his unpaid wages and an equal amount in the form of liquidated damages, as well as reasonable attorneys fees and costs of the action, including interest, pursuant to the FLSA, specifically 29 U.S.C. §216(b).

## SECOND CAUSE OF ACTION
### Overtime Wages Under New York Labor Law

155. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

156. At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of New York Labor Law §§2 and 651.

157. Defendants failed to pay Plaintiffs' overtime wages for hours worked in excess of forty hours per week at a wage rate of one and a half (1.5) times the regular wage to which Plaintiffs were entitled under New York Labor Law §652, in violation of 12 N.Y.C.R.R. 137-1.3.

158. Due to Defendants' New York Labor Law violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, his unpaid overtime wages and an amount equal to his unpaid overtime wages in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest in accordance with NY Labor Law §198(1-a).

## THIRD CAUSE OF ACTION
### Unpaid Wages Under The Fair Labor Standards Act

425. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

426. Defendants willfully failed to pay Plaintiffs' wages for hours worked in violation of 29 U.S.C. §206(a).

427. Defendants' violations of the FLSA as described in this Complaint have been willful and intentional. Defendants have not made a good effort to comply with the FLSA with respect to compensating the Plaintiffs.

428. Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid wages and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to the FLSA, specifically 29 U.S.C. §216(b).

## FOURTH CAUSE OF ACTION
### Unpaid Wages Under The New York Labor Law

429. Plaintiffs incorporate by reference all allegations in all preceding paragraphs.

430. At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of New York Labor Law §§2 and 651.

431. Defendants failed to pay Plaintiffs' wages for hours worked in violation of New York Labor Law Article 6.

432. Due to Defendants' New York Labor Law violations, Plaintiffs are entitled to recover from the Defendants, jointly and severally, their unpaid wages and an amount equal to their unpaid wages in the form of liquidated damages, as well as reasonable attorney's fees and costs of the action, including interest in accordance with N.Y. Labor Law §198 (1-a).

## FIFTH CAUSE OF ACTION
### Violation of the Notice and Recordkeeping Requirements of the New York Labor Law

433. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

434. Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiff's primary language), of their rate of pay, regular pay day, and such other information as required by NYLL §195(1).

435. Defendants are liable to Plaintiffs in the amount of $5,000.00, per Plaintiff, together with costs and attorneys' fees.

## SIXTH CAUSE OF ACTION
### Violation of the Wage Statement Requirements of the New York Labor Law

436. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

437. Defendants failed to provide Plaintiffs with wage statements upon each payment of wages, as required by NYLL §195(3)

438.  Defendants are liable to Plaintiffs in the amount of $5,000.00, per Plaintiff, together with costs and attorneys' fees

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that judgment be granted:

a.  Declaring Defendants' conduct complained herein to be in violation of the Plaintiffs' rights under the FLSA, the New York Labor Law, and its regulations;

b.  Awarding Plaintiffs' unpaid overtime wages;

c.  Awarding Plaintiffs' unpaid wages;

d.  Awarding Plaintiffs recovery for Defendants' failure to provide wage notices and wage statements to Plaintiffs;

e.  Awarding Plaintiffs liquidated damages pursuant to 29 U.S.C. §216 and New York Labor Law §§198(1-a), 663(1);

f.  Awarding Plaintiffs prejudgment and post-judgment interest;

g.  Awarding Plaintiffs the costs of this action together with reasonable attorneys' fees; together with such further relief as this court deems necessary and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all questions of fact raised by the complaint.

Dated:   July 16, 2026
            Kew Gardens, NY

*Roman Avshalumov*
_____
Roman Avshalumov (RA 5508)
Helen F. Dalton & Associates, P.C.
80-02 Kew Gardens Road, Suite 601
Kew Gardens, New York 11415
Telephone: 718-263-9591

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PORFIRIO NOE PEREZ VARGAS, MARIO A. LARA VASQUEZ, SERGIO SANCHEZ ANORVES, FREDY OMAR BERMUDEZ MEDINA, FERNANDO SERRANO MENDOZA, and MARLON A. ZERON, individually and on behalf of all others similarly situated,

Plaintiffs,

-against-

EBRO DIQUE GROUP, LLC, EBRO CONSTRUCTION CORP., and FRANCISCO J. GARCIA, RAMON CALVO, SILVIA OLVEIRA, and JOSE TENELEMA, as individuals,

Defendants.

---

**CLASS/COLLECTIVE ACTION COMPLAINT**

---

**HELEN F. DALTON & ASSOCIATES, P.C.**
Attorneys for Plaintiffs
80-02 Kew Gardens Road, Suite 601
Kew Gardens, NY 11415
Phone (718) 263-9591
Fax (718) 263-9598

---

**TO:**

*via Secretary of State service:*

**EBRO DIQUE GROUP, LLC (DOS ID: 5014424)**
49 Ralph Street, Belleville NJ 07109

**EBRO CONSTRUCTION CORP. (DOS ID: 1881584)**
89-39 127TH STREET, RICHMOND HILL, NY, 11418

*Via Personal Service:*
**EBRO DIQUE GROUP, LLC**
49 Ralph Street, Belleville NJ 07109

**EBRO CONSTRUCTION CORP.**
89-39 127TH STREET, RICHMOND HILL, NY, 11418

Page **23** of **24**

**FRANCISCO J. GARCIA**
36 Tuttle Rd, Watchung, NJ 07069-6114

**RAMON CALVO**
30 Sweet Briar Dr, Clark, NJ 07066-2056

**SILVIA OLVEIRA**
30 Sweet Briar Dr, Clark, NJ 07066-2056

**JOSE TENELEMA**
1158 Boynton Ave Apt 4A, Bronx, NY 10472-3748